IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 13 |
| | ) | |
| MONICA J. DUNFORD, | ) | Case No. 09 B 09879 |
| | ) | |
| Debtor. | ) | Honorable Jack B. Schmetterer |
| | ) | |
| | ) | |

### FINDINGS OF FACT AND CONCLUSIONS OF LAW ON DEBTOR'S MOTION TO RESET CMI DATE AND TRUSTEE'S MOTION TO DISMISS

Debtor, Monica J. Dunford ("Dunford" or "Debtor"), filed her voluntary petition for relief under Chapter 13 of the Bankruptcy Code on March 23, 2009 ("Petition Date"). The Debtor has moved under §§ 101(10A)(ii) and 521(a)(1)(B)(ii) of the Bankruptcy Code, Title 11 U.S.C. for an order to Waive the Requirement that she file Schedule I and delay the requirement that she file Form 22C, and for an Order Setting Alternative Date for Determining the Debtor's Current Monthly Income (Docket Entry 9, "DE 9") (the "Motion"). Chapter 13 Trustee Tom Vaughn (the "Trustee") has opposed the Debtor's Motion by his Answer to the Motion (DE 15) and Motion to Dismiss this case ("Motion to Dismiss") (DE 16) (collectively, the "Response"). Debtor filed a Reply Brief (DE 19). Trustee did not file any briefing or legal argument either in support of his Response or in response to the Debtor's Reply Brief.

The basic issue involves 11 U.S.C. § 1325(b)(1) which requires that a Chapter 13 Plan must "as of the date of the plan" provide for payment of all of the debtor's "projected disposable income" (thereby a forward-looking requirement) and § 101 (10A) which defines "current monthly income" (one of the factors included in computing disposable income) as the monthly average income for the six months before the bankruptcy filing (thereby looking backwards to

historical income). These provisions, like the ancient Roman god Janus, simultaneously look both forward and backward. In this case, Debtor's income dropped sharply about a month prior to her case filing, so she does not actually have enough income to pay on her Plan if the computation looks only to historical rather than actual income.

Through oral stipulation of Debtor's counsel and a representative of the Trustee on the record in open court, the parties waived the right to present any evidence. Rather, they each elected to stand on the facts alleged in their respective filings that were not denied. The following Findings of Undisputed and Undenied Facts and Conclusions of Law are made and will be entered based on the pleadings and record of proceedings. Pursuant thereto, by separate orders the Debtor's Motion will be granted and the Trustee's Motion to Dismiss will be denied.

FINDINGS OF UNDISPUTED AND UNDENIED FACT

1.  Debtor filed a voluntary petition ("Petition") for relief under Chapter 13 of the Bankruptcy Code on March 23, 2009 (the "Petition Date").

2.  In connection with filing her Petition, Debtor filed her schedules and other related documents which are required to be filed in connection with her Chapter 13 case, except for *Schedule I - Current Income of Individual Debtor(s)* ("Schedule I") and *Form 22C, Chapter 13 Debtor's Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income* (the "Means Test Form").

3.  On March 26, 2009, Debtor filed a motion to waive the requirement that she file Schedule I and delay the requirement to file the Means Test Form, and for an order setting an alternative date for determining the Debtor's current monthly income ("CMI").

4. Debtor filed her proposed Chapter 13 Plan on April 7, 2009 providing for an initial Plan period of 36 months with unsecured creditors to receive 5% of their claims.[1]

5. On April 10, 2009, the Trustee filed a Motion to Dismiss this case, asserting that the Debtor failed to comply with Rule 1007(c) Fed. R. Bankr. P. which required the Debtor to file her Schedule I and Means Test Form within 15 days of the Petition Date.

6. Since the Debtor's case was filed in March 2009, the period which would normally be used pursuant to § 101(10A) to determine the Debtor's CMI as defined by law would be the six-month period prior to her bankruptcy filing, from September 1, 2008 to February 28, 2009.

7. The Debtor was employed by Peridontics, Ltd. for a significant portion of this period. However, she lost her job in February 2009, and currently receives unemployment compensation.

8. Based on the six-month period preceding the Debtor's filing for bankruptcy, line 2 of the Means Test Form would have to report as her monthly income $2,463, based on her former employment and salary which no longer exists. Line 7 of the Means Test Form would have to report $520 based on actual income from child support and alimony. Therefore, the total income on line 11 would be $2,983 per month even though she lost much of that income pre-bankruptcy.

9. Debtor requests that the Court determine her CMI as a six-month average of income earned during the period beginning on November 1, 2008 through April 30, 2009 (the

---

[1] Neither party presented any argument regarding what the "applicable commitment period" under §§ 1325(b)(1)(B) & (B)(4) is, and therefore decision thereon is reserved for the confirmation hearing.

"Revised Six Month Period"), that is about three months pre-bankruptcy and three months post-bankruptcy.

10.     Under the proposed Revised Six Month Period, her Schedule I would reflect the following sources of monthly income: $520 on line 10 for child support and alimony, $1,690 for unemployment benefits and $463 on line 11 for food stamps. The total amount of income based upon the Revised Six Month Period would be $2,153.00 per month. This amount is $830 less per month than the amount that would be listed on the Means Test Form if based upon the pre-petition six month period. *(See* Finding No. 8).

11.     Statements of fact contained in the following Conclusions of Law shall constitute additional Findings of Fact.

## CONCLUSIONS OF LAW

The issues presented by the Debtor's Motion concern certain revisions in the Bankruptcy Code that Congress implemented in the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (often referred to by the acronym "BAPCPA") which amended the Bankruptcy Code, Title 11 U.S.C. 101 *et seq.* Pursuant to § 521(a)(1)(B)(ii), "unless the court orders otherwise," one of the duties that an individual debtor must perform in bankruptcy is to complete and file a schedule of current income, otherwise known as Schedule 1.[2] Schedule I provides information as to income that is ordinarily used within the guidelines under the Bankruptcy Code to determine

---

[2] Section 521, in pertinent part, provides:
"(a) The debtor shall -
    (1) file
        (B) <u>unless the court orders otherwise</u> -
            (ii) a schedule of current income and current expenditures.
(Emphasis added).

the debtor's Current Monthly Income ("CMI"), as defined by law. Specifically, § 521(a)(l)(B)(ii) works in conjunction with § 101(10A)[3] which defines a debtor's CMI.

CMI may be determined under that provision in one of two ways. If a debtor files a Schedule I, the CMI is "the average monthly income from all sources ... without regard to whether such income is taxable income, derived during the 6-month period ending on the last day of the calendar month immediately preceding the date of the commencement of the case...." 11 U.S.C. § 101(10A)(A)(i). In connection with §§ 101 (10A)(A)(i) and 521(a)(1)(B), Federal Rule of Bankruptcy Procedure 1007(c) requires a debtor to file all schedules and supporting documents within fifteen days of filing a petition for relief under the Bankruptcy Code (the "Code"). If a debtor fails to follow this requirement, a case may be dismissed. *See* Fed. R. Bankr. P. 1007(c). In this case, the Trustee moved for dismissal because Debtor has not filed her Schedule I and Means Test Form.

---

[3] Section 101(10A) of the Code provides: The term 'current monthly income' -

(A) means the average monthly income from all sources that the debtor receives (or in a joint case the debtor and the debtor's spouse receive) without regard to whether such income is taxable income, derived during the 6-month period ending on -
    (i) the last day of the calendar month immediately preceding the date of the commencement of the case if the debtor files the schedule of current income required by section 521(a)(1)(B)(ii); <u>or</u>
    (ii) the date on which current - is <u>determined by the court</u> for purposes of this title if the debtor does not file the schedule of current income required by section 521(a)(1)(B)(ii); and
(B) includes any amount paid by any entity other than the debtor (or in a joint case the debtor and the debtor's spouse), on a regular basis for the household expenses of the debtor or the debtor's dependents (and in a joint case the debtor's spouse if not otherwise a dependent), but excludes benefits received under the Social Security Act, payments to victims of war crimes or crimes against humanity on account of their status as victims of such crimes, and payments to victims of international terrorism (as defined in section 2331 of title 18) or domestic terrorism (as defined in section 2331 of title 18) on account of their status as victims of such terrorism.

(Emphasis supplied.)

5

However, the statute also specifies in the alternative that this requirement applies "unless the court orders otherwise," a grant of discretion to the judge. As earlier noted, the Debtor's Motion seeks relief from the requirement that she file a Schedule I and also requests an extension of time to file her Means Test Form. In regard to her pending request for an extension of time to file the Means Test Form, Bankruptcy Rule 1007(c) allows the Court to grant her request if cause exists for an extension, and as noted § 521(a)(1)(B) provides statutory authority to do so.

Section 101(10A)(A)(ii) provides an alternative available to a debtor when the current monthly income determined from the six-month period preceding the petition date does not provide an accurate reflection of the debtor's actual available income. In the event the debtor does not file Schedule I and is excused from doing so, § 101 (10A)(A)(ii) permits the bankruptcy judge discretion to reset the date on which current income is to be determined to a "date on which currently monthly income is determined by the court." *(See n.2.)* The Debtor has sought an extension with regard to her Means Test Form because determination of her CMI pursuant to § 101(10A) using a period wholly pre-bankruptcy will have a direct effect on determining her income on her Means Test Form. Cause to, grant the Debtor's request has been shown here based upon Debtor filing her Motion within fifteen (15) days of the Petition Date, history of Debtor's declining income, and the Revised Six Month Period she proposes including three months pre-petition and three months post-petition.

Debtor has not yet filed her Schedule I in conjunction with the relief she now seeks; rather than determine her income based upon the prescribed formula imposed in Schedule I under § 101(10A)(A)(i), she filed her present Motion. She thereby asks for judicial use of the discretion specifically provided by statute under § 101(10A)(A)(ii) to determine the Debtor's CMI. Debtor

asks to be excused from the requirement that she file a Schedule I and allowing her to file a document entitled "Debtor's Schedule of Projected Monthly Income." In addition, she asks for an order that her CMI be determined on a six-month period between November 1, 2008 to April 30, 2009 (three months pre-bankruptcy, three months post-bankruptcy), and that she be allowed to file her Means Test Form based on that Revised Six Month Period.

BAPCPA amended § 521 of the Bankruptcy Code and also added § 101(10A). The specification of judicial discretion in § 521(a)(1)(B)(ii) and § 101(10A)(A)(ii) permits a change in the § 101(10A) look-back period. The statute thereby grants discretion to allow for cases wherein debtor's Schedule I would not realistically reflect the debtor's CMI. *In re Hoff,* 402 B.R 683 (Bankr. E.D.N.C. 2009) (Doub, J.) (citing *In re Montgomery,* No. 07-051781, 2008 WL 597180, *2 (Bankr. M.D.N.C. Mar. 4, 2008)). If Chapter 13 debtors were always required to use the pre-petition six month average as their current monthly income, even when there has been a significant involuntary decrease in their actual income, the Chapter 13 plan proposed by those debtors would consistently be rendered unfeasible because their disposable income would be reported as an amount much larger than what is actually available for them to pay, See *In re Distler,* No. 09-707-8, 2009 WL 1651446 at *3 (Bankr. E.D.N.C. June 11, 2009) *(citing Hoff,* 2006 WL 6070518 at *2; *In re Ingram,* No. 06-02714-8, 2006 WL 6070518 at *1 (Bankr. E.D.N.C. Nov. 20, 2006)).

These concerns are not unusual in Chapter 13 cases, but have usually been dealt with by opinions resting on statutory interpretation of the provisions. Efforts at determining what is meant by apparently contrary provisions have produced many diverse opinions.

A Ninth Circuit opinion reads the setting of a six-month pre-bankruptcy period to be the conclusive basis for calculating disposable income under § 1325(b). *Maney v. Kagenveama (In re Kagenveama)*, 541 F.3d 868 (9th Cir. 2008). Opinions out of the Eighth and Tenth Circuits have found that the six-month pre-bankruptcy period is only a starting point in the statutory analysis, "finding a statutory presumption" for the calculations, a presumption that may be rebutted by showing that the calculations should be changed if debtor's income has changed. *See Coop v. Frederickson (In re Frederickson)*, 545 F.3d 652 (8th Cir. 2008); *Hamilton v. Lanning (In re Lanning)*, 545 F.3d 1269, 1282 (10th Cir. 2008). This approach may be viewed as conflicting with the wording of § 1325(b) wherein no language implies or creates a presumption in the setting of a six-month pre-bankruptcy period, and that reasoning was criticized in *Kagenveama*, 541 F.3d at 874.

One of our colleagues in this District has sought to "harmonize" the facially inconsistent provisions of § 1325(b) and § 101(10A) by an interpretation based on principles of statutory construction. *In re Johnson*, 400 B.R. 639, 649 *et seq.* (Bankr. N.D. Ill. 2009). The opinions in *Frederickson*, *Lanning* and *Johnson* each resolved the apparent conflict between the look-back and look-forward provisions by allowing the debtors to compute projected disposable income according to actual post-bankruptcy income.

None of those opinions cited above discussed or were asked to apply the statutory discretionary provisions sought to be applied here, or any other direct statutory support for the presumptive or harmonizing approach. Without relying on statutory authority for the reasoning and the discretion exercised, those opinions may be said to run contrary to the generally recognized intent of Congress in BAPCPA to limit some degree of discretion and judicial

8

flexibility from the law. See In re Farrar-Johnson, 353 B.R. 224, 231 (Bankr. N.D. Ill. 2006) and legislative history materials cited.

Great respect is due to the foregoing efforts at statutory construction to avoid harshness to results from lost income that endangers the future of many Americans seeking a fresh start in bankruptcy during the present economic recession. However, statutory analysis is not needed when the Congress placed specific tools in the statute giving discretion to the Bankruptcy Judge to deal with the contradictory provisions, tools relied on by Debtor's Motion in this case. Indeed, it must be questioned whether principles of statutory consideration such as were addressed in the prior cited cases may be used at all when Congress has granted discretion over the subject in issue and circumscribed it by defining what it is and how it may be used. Discretion is granted to delay the filing of Schedule I and to reset the six-month period to compute CMI. That implies that such may be done for reasons and cause reasonably found to be appropriate. In light of the statutory scheme and expressed discretion, judicial power may not exist to create discretion from statutory analysis and to permit relief other than by the path expressly permitted by statute. The "duty of interpretation" may not arise in this situation. See Caminetti v. United States, 242 U.S. 470, 485 (1917).

The procedure sought to be used by Debtor here relies on the express statutory discretion that may be exercised. Resetting of the six-month period would be attractive to any debtor in a Chapter *13* case in which the debtor's income dropped significantly during the six months preceding the commencement of the case. *In re Crink,* No. 08-10824C-7G, 2008 WL 2944652, *2 (Bankr. M.D.N.C. July 31, 2008). Such a debtor must still seek leave of court to be excused from the requirement to file a Schedule I within the time period prescribed in the

Bankruptcy Rules, *see* Fed. R. Bankr. P. 1007(c), and also seek a ruling to permit resetting of the six-month period under § 101 (10A)(A)(ii). The Debtor's Motion here specifically and timely sought leave of the Court in this regard since the Motion was filed only three days after the Petition Date.

Whether or not to grant Debtor's Motion still turns on the standards of discretion that should apply to grant or deny it. There are only a few published decisions concerning requests to reset the six-month period, all of those issued by bankruptcy judges. *See, e.g., Hoff,* 402 B.R. at 686; *Distler,* 2009 WL 1651446 at *2. *Hoff* relied on § 1325(a)(3)[4] to support application of a good faith standard to a debtor's request for the court to reset the appropriate six month period under § 101(10A)(A)(ii). *See Hoff,* 402 B.R. at 686-87. Section 1325 is applicable because filing a Schedule I (or determining a debtor's CMI) relates directly to whether a Chapter 13 plan is confirmable. To that end, a good faith analysis is central to confirming a debtor's plan. *See, e.g., In re Chapman,* 146 B.R. 411, 420 (Bankr. N.D. Ill. 1992) ("[G]ood faith analysis in Chapter 13 requires the court to examine both the debtor's good faith in filing the Chapter 13 petition and in proposing the plan.").

Applying this standard to the instant case, it appears that the Debtor's Motion was filed in good faith and the totality of the circumstances warrant the use of the Revised Six Month Period rather than the six months preceding the Petition Date to determine the Debtor's CMI. Shortly before filing her Petition, the Debtor lost her job. If she filed her Schedule I, it would have

---

[4] Section 1325(a)(3) provides:

   (a) Except as provided in subsection (b), the court shall confirm a plan if
      (3) the plan has been proposed in good faith and not by any means forbidden by law....

10

reflected her income for most of the six months before her job was lost. Therefore, her CMI computed on that income amount would be much larger than her actual, "real-time" monthly income earned after filing for bankruptcy. Given that her financial situation deteriorated significantly one month before the filing of her petition, cause does exist to determine her current monthly income under 11 U.S.C. § 101(10A)(A)(ii). She requests an order resetting the applicable six month period so as to run from November 1, 2008 to April 30, 2009. By selecting these dates, the Debtor is proposing about three months when she was receiving her old income, one month when she received both her old income and unemployment compensation, and two months of the period when she received only unemployment compensation. Selecting this six-month time period partly reflects the Debtor's financial situation of present unemployment, but also takes into account her education, experience and effort to regain employment. *See Hoff*, 402 B.R at 687. The Debtor's Motion might have been more tenuous had she selected a six-month period that simply covered a six-month period where she was receiving unemployment compensation post-petition. Clearly this Debtor has a vocation and set of skills that enabled her to be employed for a significant portion the pre-petition six month period. If she had failed to reflect that education and experience in the six-month reset period requested in order to compute CMI, that would weaken the good faith nature of her request. While § 101(10A)(A)(ii) allows a bankruptcy judge to recast the time period for determining a debtor's CMI, a debtor's request for that relief must be found to be in good faith. Most importantly, Debtor has proposed a resetting resulting in an obligation to repay her unsecured creditors that she can afford with only moderate stress, and she does not seek a further resetting that might leave her greater but unneeded financial benefit.

The Trustee stated in his Response to Debtor's Motion that he does not have knowledge concerning the Debtor's employment history, and cannot judge the good faith nature of the Debtor's Motion. That lack of knowledge at the time was based on his lack of opportunity at the time to discuss these matters with the Debtor or hold a creditor's meeting under 11 U.S.C. § 341. However, the Trustee has, through his representative, since waived his right to contest Debtor's factual assertions for purpose of opposing her Motion. Therefore, statements in his Response regarding a lack of knowledge do not comprise a denial. Taking Debtor's counsel undenied factual statements in the Motion as true, it appears for reasons stated that the totality of the circumstances surrounding the Debtor's Motion are sufficient and cause exists for the Court to determine the appropriate six month period pursuant to § 101(10A)(A)(ii).

In making this determination, it is further noted that the Bankruptcy Code provides some guidelines when discretion is exercised under § 101(10A)(A)(ii). *See In re Shelor*, No. 08-80738C-13D, 2008 WL 4344894 (Bankr. M.D.N.C. Sept. 23, 2008). Practically, § 1324 and the Federal Rules of Bankruptcy Procedure provide certain boundaries that a court must take into consideration when determining the appropriate date for determining a debtor's CMI under § 101(10A)(A)(ii). *Shelor* provided that:

> [S]ection 1324 mandates that a confirmation be held no later than 45 days after the date of the meeting of creditors. Rule 2003 [Fed. R. Bankr. P] provides that the meeting of creditors in a Chapter 13 case shall be called no later than 50 days after the order for relief. This means that if the meeting of creditors is scheduled and completed on the last permissible day, a confirmation hearing must be commenced within 95 days after the petition date. If the confirmation hearing is to be completed on that date, the determination of current income will have to be made no later than on the same day, in which event the applicable six-month period for determining CMI will be the six months preceding that date, i.e., three months preceding the petition date and the three months following the petition date. If either the meeting of creditors or the confirmation hearing is not

12

completed on the date first scheduled and is completed at a later date, there is a possibility of a later date for determination of current income and confirmation.

*Shelor*, 2008 WL 4344894 at *3 n.4. The Debtor's request that the six-month period to determine her CMI be reset to run from November 1, 2008 to April 30, 2009, would ordinarily fit within the time line and parameters prescribed by § 1324 of the Bankruptcy Code and Rules.

## CONCLUSION

Based on totality of the circumstances and the Debtor's good faith request, April 30, 2009, rather than the Petition Date, shall be the date used to count back six months to compute the Debtor's CMI.

Based on the foregoing, Debtor's motion to excuse the filing of Schedule I will be granted. The Debtor shall prior to the next confirmation hearing date which is set for **August 5, 2009 at 11:00 a.m.,** file her proposed documents providing a Schedule of Projected Monthly Income and Means Test Form. The six-month period therein for determining the Debtor's CMI shall be November 1, 2008 through April 30, 2009. Upon approval of the Debtor's proposed schedule and Means Test Form, the Trustee's Motion to Dismiss will be denied.

ENTER:

_____
Jack B. Schmetterer
United States Bankruptcy Judge

Entered this 21st day of July 2009